**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| EREINA COVINGTON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | No. 10-2874 |

_____:

## MEMORANDUM RE: SOCIAL SECURITY APPEAL

**Baylson, J.**                                                    **April 22 , 2010**

Plaintiff, Ereina Covington, seeks judicial review of the decision by the Commissioner of

the Social Security Administration (the "Commissioner") denying her application for Social

Security Disability Insurance Benefits ("SSDI") under Title II of the Social Security Act ("the

Act"), 42 U.S.C. §§ 1381-83(c) (2000).  Jurisdiction is established under § 1383(c)(3), which

incorporates § 405(g) of the Act.  42 U.S.C. §§ 405(g).  After careful and independent

consideration of the matter, and for the following reasons, the Court will **grant** Covington's

request for review, vacate the decision of the Administrative Law Judge (the "ALJ"), and remand

for further proceedings.

## I.      Factual and Procedural History

Covington applied for social security and disability benefits on April 3, 2007.  R. 23.

Born on September 15, 1966, Covington was forty years old on March 6, 2007, the onset date of

her alleged impairment, and forty-two years old at the time of the administrative hearing,

defining her as a "younger individual," pursuant to 20 C.F.R. § 404.1563.  R. 18.  Covington was

placed in special education programs at school until she dropped out in the tenth grade, returning to finish her high school education at age 26. R. 133, 165, 209, 124, 133, 214. She then attended two semesters at the Business Institute of Philadelphia, but dropped out due to sickle cell anemia. R. 133, 214. Covington communicates in English. R. 18. She and Michael Clemens, her second husband, have legal custody of her 3-, 5-, and 7-year-old grandchildren, and lives with her husband; Covington's grandchildren; Covington's 19-year-old son; and Clemens's sons, age 10 and 14. R. 26-7, 28-29, 30, 43-4.

Covington's prior work experience was for the New Jersey Department of Motor Vehicles ("NJ DMV"), where she was a clerk for eight years. R. 15-18, 46, 129, 199. Covington reported in the Function Report submitted with her SSDI application that her employer was not aware of her anxiety or learning disorders until the NJ DMV audited Covington's section and discovered that Covington was responsible for "all of the filing errors." R. 147. Covington experienced her first anxiety attack at that time and, in 2005, her employer sent her to an inpatient treatment facility for two months as a result of stress and depression. Id.; see also R. 25-26; 209. Her employer tried to provide her with job coach upon her return, but Covington's anxiety persisted and it was suggested to her that she resign before being terminated. Id. Her last date insured for the purpose of this application is December 31, 2012. R. 126.

Covington alleges disability due to multiple severe impairments including anxiety, panic disorder without agoraphobia, major depression, impaired intellectual functioning, and learning

disorder, as well as obesity and degenerative changes of the first metatarsophalangeal joint of the right foot.[1]  R. 199-200, 208-20, 247, 252, 255, 261-64, 273-74, 281-95, 349-58.

### A.    Medical Evidence of Covington's Mental Impairments

On January 21, 2006, Covington underwent a psychological evaluation by Joseph Wieliczko, Psy.D., of the Trenton Division of Vocational Rehabilitation Services (DVRS).[2]  R. 208-13.  Covington reported to Dr. Wieliczko that she sought DVR services for "help with [her] learning disability."  R. 208.  She related that she "had reading and spelling difficulties all her life;" that she had been placed in special education classes from third grade throughout the end of her schooling; and that her reading difficulties interfered with her abilities to "do her job at work, do paperwork at home, read[] street signs and every other task requiring reading."  R. 208-10.  She told the evaluator that she had panic attacks every couple of weeks, which often arose out of her inability to "comprehend[.]"  R. 210.

Dr. Wieliczko assessed Covington's reading and spelling levels at a third grade level and her arithmetic at a fifth grade level using the Wide Range Achievement Test III ("WRAT-III").  R. 208, 211.  Weschsler Adult Intelligence Scale III ("WAIS-R") testing measured Covington with a full scale I.Q. of 72, a verbal I.Q. of 71, and a performance I.Q. of 78.  R. 210-11.  Dr. Wieliczko's diagnostic impressions included findings of intellectual functioning in the borderline range, learning disorder NOS, and anxiety disorder.  R. 212.  Dr. Wieliczko recommended that

---

[1]The ALJ found Covington's physical condition related to degenerative joint disease in her foot to have been resolved.  R. 16.  Covington does not now challenge this finding.

[2]Reports issued by the DVRS are referred to in the ALJ's opinion and the Commissioner's Brief as reports by New Jersey's "OVR."  See e.g. R. 18.  The reports themselves refer to the office as "DVRS."

Covington seek therapy for management of the "anxiety, anger, and stress" related to her "low academic achievement levels," and that she not pursue work which would "emphasize reading and spelling skills," but would benefit from guidance as to appropriate work  R. 212.

A March 17, 2006 DVRS psychological evaluation by Perry Shaw, M.D., also identified "problems with thought processing" and stated that "it would appear that any short term help in reading would probably not prove significantly helpful[,]" given that Covington has not made progress up until this time. R. 215.  Dr. Shaw echoed Dr. Wieliczko's findings regarding Covington's need to find "more appropriate work" due to "cognitive impairment." R. 215.  A DVRS Individualized Plan for Employment, issued on March 18, 2006, identified "data entry clerk" as an "employment outcome" for Covington.  R. 161.  However, the report stated that Covington was "eligible for vocational rehabilitation services because [she] has a disability, which limits [her] ability to work [and that she would] need vocational rehabilitation services to achieve [this] employment outcome."  R. 161.

A state consultative examiner, Mark Wagner, Ph.D., evaluated Covington on July 6, 2007.  R. 216-23.  Dr. Wagner reported Covington's mental health history as "rather vague," but diagnosed her with Panic Disorder without Agoraphobia and Major Depressive Disorder.  R. 217, 219.  Dr. Wagner also observed that Covington's abstract reasoning skills and range of information were somewhat restricted.  R. 218-19.  Dr. Wagner found Covington to have marked deficiencies in the ability to understand, remember, and carry out detailed instructions and moderate deficiencies in every area of social functioning.  R. 222.  Dr. Wagner concluded by stating that Covington was not able to "manage benefits in [her] own best interest" and "need[ed] support of others."  R. 223.

The state agency psychological consultant, John Chiampi, Ph.D., completed a Psychiatric Review Technique ("PRT") Report on July 11, 2007. R. 228-41. The limitations assessed by Dr. Chiampi in the Mental Residual Functional Capacity ("RFC") Assessment mirrored those identified by Dr. Wagner, but added moderate limitations in the ability to travel. R. 225. Dr. Chiampi's diagnoses were also consistent with Dr. Wagner's, but additionally identified Covington as having a medically determinable impairment of "borderline intellectual functioning." R. 232. Dr. Chiampi concluded that Covington "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." R. 227.[1]

**B.     Social Security Hearing**

The Social Security Administration denied Covington's application on July 11, 2007, and Covington timely filed a request for a hearing by an ALJ. R. 23. ALJ Suanne Strauss held a hearing on November 25, 2008. R. 21-50.

At the hearing, Covington testified that she had previously filed for disability retirement with the State of New Jersey, which was denied because her supervisor had already slated her to

---

[1] The record also contains two treatment records from Covington's treating physician, Kenneth Kron, M.D., who assessed Covington with extreme deficiencies in areas of decision-making and social functioning. R. 298-304; 349-58. The ALJ rejected the conclusions of Dr. Kron because she found them to be unsupported by "the record and [Covington's] activities" and because Dr. Kron had provided only two treatment notes from 2008. R. 16. While she references Dr. Kron's reports in her brief, Covington has not challenged the ALJ's credibility determination. This Court finds that Dr. Kron's assessment of extreme limitations are not "well-supported by diagnostic evidence" and will give deference to the ALJ's credibility determination as to Dr. Kron. See 20 C.F.R. § 404.1527; Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

be fired when Covington resigned.  R. 25.  Covington testified to problems with depression, suicidal thoughts, lack of concentration, and racing thoughts.  R. 34-35.  Covington described in detail the panic attacks experienced at the NJ DMV.  R. 29-30, 37, 38-39.  She stated,

> I would have racing thoughts, and then when try to get it together, then I go into a panic attack.  And I never knew what my problem was, and so I just took it as . . . I'm a single parent [prior to a second marriage at the end of 2005].  I'm doing a lot.  And then it got worse, and as I went into the working field, I was trying to cope.  I had a coworker there . . . and she knew I had a learning disability.  And she knew something was wrong with me, so she helped me.  That's how I lasted so long on my job, but it was days where I couldn't even go to work.  That's when I would go into my anxiety. . . . And then when I would hear voices, and nobody understood me.  And I was trying to talk it out and couldn't.  But they would call me crazy, and . . . I didn't know what to do.  And then I couldn't breathe, and when I couldn't breathe, I was trying to tell [my co-worker] what was wrong with me. And she couldn't understand, so she took me home.

R. 29-30.

Covington also testified that her panic attacks sometimes require her to seek refuge while in public, by going into the "fetal position" in a public bathroom.  R. 29-30, 37.  She stated that she tried to secure new employment as a bus driver, but "panicked behind the wheel at a school bus."  R. 38-39.  She also testified to hearing "voices," but acknowledged that she has not been placed on antipsychotic medication, although her physician has prescribed Xanax and Remeron, as well as medication to aid in sleeping.  R. 32-33; 35.

Covington's husband Michael Clemens testified about Covington's depression and panic disorder, stating that on "several occasions" he has had to take her to a "private place" when they are in public, so she recover by going into a fetal position.  R. 40-43.  Clemens testified that Covington participates with him in cooking for and care of the children, but requires his direction.  R. 43-44.  Clemens portrayed his wife's mental health issues as tied to events in her

distant past that she needs to get "off her chest," and noted that she "finds comfort in the people that she's talking to," meaning, presumably, her counselors.  R. 42, 44-45.

Finally, the ALJ heard from the vocational expert, Daniel Rapucci.   The vocational expert identified Covington's position at the NJ DMV as encompassing the work of general, data, and information clerks, as defined by the Department of Labor's Dictionary of Occupational Titles ("DOT"), which each require a minimum of grades five to seven.  R. 46.  See DOT code 209.562-010; DOT code 209.587-010; DOT 237.367-022.  The ALJ then presented a hypothetical to the expert, inquiring whether an individual with the nonextertional limitations described in Dr. Wagner's report would be able to perform unskilled work.  R. 46.  The expert answered, "yes."  Id.   When asked by the ALJ whether Covington could perform unskilled work based on the limitations defined by Dr. Kron, the expert stated "absolutely not."  R. 47.  In response to questions from Covington's attorney, the expert testified that Covington's work would be affected by panic attacks as Covington has described them and that her reading disability as assessed by the DVRS  would have "impacted her ability" to perform past work.   Id.

## C.    ALJ's Opinion

The ALJ denied Covington's claim in a written decision of January 8, 2009, holding that Covington is not disabled under the Act.  R.13-20.  At steps one and two, the ALJ determined Covington had not engaged in any substantial gainful activity since her onset date and suffered from severe impairments including major depressive disorder, learning disorder, and panic disorder.  R. 15.

At step three, the ALJ found Covington to have "mild limitations in performing activities in daily living, moderate limitations in social functioning, moderate limitations in concentration

and has had one decompensation" in 2005.  R. 16.  The ALJ did not find Covington's

impairments to meet or medically equal one of the Listed impairments in 20 C.F.R. Part 404,

Subpt. P, App. 1.  R. 16, including Listing 12.05C.[1]

-----

[1] 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidence by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded

Or

B. A valid verbal, performance, or full scale I.Q. of 59 or less;

Or

C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning;

Or

D. A valid verbal, performance or full scale I.Q. of 60 through 70, resulting in at least two of the following:

1. Marked restrictions of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace;

Or

4. Repeated episodes of decompensation, each of extended duration.

20 CFR Part 404, Subpart P, Appendix 1, § 12.05.

In assessing Covington's RFC, the ALJ noted that Covington testified about "mental health problems secondary to job stress." R. 17. The ALJ found the medical evidence to show that Covington had "work stress and stress from her teenage son" that required hospitalization in 2005, as well as "intensive outpatient treatment." Id. Nevertheless, the ALJ found that "after this one episode, there is little evidence that [Covington] is unable to perform all work activity." Id.

In coming to this conclusion, the ALJ credited Clemens's testimony, but declined to credit Covington's own testimony regarding the severity of her symptoms or to the extent her testimony contradicted the ALJ's RFC assessment. R. 17. In her credibility determination, the ALJ relied on (a) Covington's testimony that she had not been prescribed anti-psychotic medication, despite stating that she heard voices; (b) the ALJ's interpretation of a statement by the vocational expert that Covington would not have been able to sustain her past work at the assessed reading level; and (c) the suggestion by DVRS that was Covington capable of performing data entry work, a career path the ALJ found "incompatible with her allegations of borderline intelligence and a near total inability to read." R. 18. The ALJ concluded that "there is little evidence that [Covington] is unable to perform all work activity," pointing to (a) her role in caring for her home and the children, (b) a foot injury sustained while dancing, and (c) her ability to make all scheduled mental health appointments. R. 16-18. The ALJ found that Covington has the residual functional capacity ("RFC") to perform a "full range of unskilled work," despite her "borderline I.Q. scores and an inability to read." R. 18.

The ALJ additionally found Covington to have "at least a high school education" and the ability to communicate in English, but did not mention Covington's placement in special

education classes.  R. 18.

At step five, the ALJ determined that Covington could not perform her past relevant work because it was "light and sedentary, semiskilled[.]"  R. 18.  The ALJ relied on the testimony of the vocational expert to find that jobs exist in significant numbers in the national economy for an individual with Covington's age, education, work experience, and RFC.  R. 19.   The ALJ determined the testimony of the vocational expert to be "consistent with the information contained in the [DOT]."  R. 19.  The ALJ concluded that considering Covington's age, education, work experience, and RFC, Covington is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and found a finding of "not disabled" to be appropriate pursuant to the Act.  R. 19.

Covington timely requested, but was denied, review by the Appeals Council, making the ALJ's decision final on March 11, 2010.  R. 1-5, 8-9, 168-170.  On May 18, 2010, Covington filed this action requesting review of the denial by the ALJ of Covington's disability benefits. ECF No. 3.

## II.    Parties' Contentions

### A.    Covington's Objections

Covington contends that the ALJ's conclusion that Covington can perform the full range of unskilled work is not supported by substantial evidence, due to errors at step five of the analysis.  Pl.'s Brief 9.  Covington avers, first, that the hypothetical question posed to the vocational expert did not fully encompass Covington's mental impairments or learning disability as established by the record.  Id. at 6-7, 9.  Covington argues that ALJ also erred by failing to engage in a searching evaluation of Covington's individualized stress level.  Id. at 12-14.

Covington further contends that the ALJ's step five analysis is deficient due to her failure to inquire of the vocational expert about specific jobs that exist in substantial numbers in the national economy. <u>Id.</u> at 12.

Covington argues, as well, that the ALJ committed a reversible error in failing to elicit input at the hearing from a medical expert regarding her equivalence determination on Covington's combined impairments. <u>Id.</u> at 14-16. Finally, Covington relies on arguments made prior in the brief to contend that the ALJ's determination of "not disabled" was not supported by substantial evidence. <u>Id.</u> at 17.

### B.  The Commissioner's Response

The Commissioner responds that the ALJ properly incorporated all credibly-established limitations into the hypothetical presented to the vocational expert and accounted for those limitations by limiting Covington to unskilled work. Def.'s Br. 14-15. The Commissioner contends that, by concluding that Covington could not return to past work and limiting her to unskilled work, the ALJ properly addressed Covington's limitations due to stress. <u>Id.</u> at 16-18. As to the ALJ's failure to question the vocational expert about specific jobs available to Covington in the national economy, the Commissioner contends that, under SSR 96-9p, Covington's mental limitations "would not substantially erode the occupational base," allowing the ALJ to rely on the Grids and obviating the need for testimony on specific jobs. <u>Id.</u> at 21-22. The Commissioner further contends that no conflict exists between the vocational expert's testimony and the DOT. <u>Id.</u> at 22. Finally, the Commissioner responds that the Agency's Modification Program, as outlined in § 404.906(b)(2), made an ALJ's decision to hear medical

testimony on an equivalence determination discretionary and that the evidence in the record rendered an additional expert unnecessary.  Id. at 7.

### III.  Legal Standards

#### A.  Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.

#### B.  Standard of Review

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.  However the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  Id.. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'"  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)).  In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'"  Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  However, the "administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it

rests."  Cotter v. Harris, 642 F.2d 700, 704  (3d Cir. 1981), <u>reh'g denied</u>, 650 F.2d 481 (3d Cir. 1981).

This Court's review of the legal standards applied by the ALJ is plenary.  <u>See</u> <u>Allen v. Barnhart</u>, 417 F.3d 396, 398 (3d Cir. 2005).

## C.      Disability Claims Analysis

To be defined as disabled under the Social Security Act, a claimant "must demonstrate some 'medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period.' "  <u>Burnett v. Commissioner  of Social Sec. Admin.</u>, 220 F.3d 112, 118 (3d Cir. 2000) (citing <u>Plummer v. Apfel</u>, 186 F.3d 422 427  (3d Cir. 1999); <u>see also</u> 42 U.S.C. § 423(d)(1).  The Act requires claimants to establish that their "physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'"  <u>Id.</u> (citing <u>Plummer</u>, 186 F.3d at 427-28 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner has promulgated a  five-step sequential evaluation for determining whether a claimant is eligible for benefits, set forth in 20 C.F.R. § 404.1520.  First, the Commissioner must consider a claimant's current work activity and deny the claim if a claimant is currently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b), 416.920(b).  Second, the Commissioner must determine whether the impairment or combination of impairments suffered by a claimant are severe.  20 C.F.R. § 404.1520(c), 416.920(c).  If a claimant fails to show either that the impairments are "severe" or do not meet the duration requirement in 20 C.F.R. § 404.1509, the Commissioner must deny the claim.  20 C.F.R. §

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Three, the Commissioner must evaluate whether a

claimant's impairment(s) meets or equals the severity of one of the impairments in the Listing of

Impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 404.1520(d),

416.920(d).  If so, a claimant is eligible for disability benefits.  Id.

Fourth, if the Commissioner does not approve the claim under step three, the

Commissioner must consider whether a claimant retains the residual functional capacity ("RFC")

to meet the physical or mental demands of past relevant work.  20 C.F.R. § 404.1520(e)-(f),

416.920(e)-(f).  A claimant must show an inability to resume past relevant work.  Burnett, 220

F.3d at 118.  Finally, if a claimant meets this burden, "the burden of production shifts to the

Commissioner, who must demonstrate the claimant is capable of performing other available

work in order to deny a claim of disability."  Burnett, 220 F.3d at 118, 20 C.F.R. § 404.1520(e)-

(f), 416.920(e)-(f).  In this final step, the Commissioner must approve the claim unless the

Commissioner can show that other jobs "exist in significant numbers in the national economy

which the claimant can perform," consistent with the claimant's impairments, age, education,

past work experience, and RFC.  Burnett, 220 F.3d at 118-19, 20 C.F.R. § 404.1520(f),

416.920(f).

**IV.**     **Discussion**

    **A.**     **The Commissioner has not met his burden at step five.**

        **1.**     **The ALJ's hypothetical to the vocational expert did not reflect Plaintiff's intellectual impairment.**

Covington contends that the ALJ's conclusion improperly relied on a hypothetical

question to the vocational expert that failed to account for the mental impairments assessed by

Dr. Wagner and Dr. Chiampi, including deficiencies related to Covington's learning disorder. Pl.'s Br. at 6-7, 9.

It is the Commissioner's burden, at step five to establish that a claimant could perform work "'in one or more occupations' which exist in significant numbers" in either the claimant's region or in the national economy, consistent with the claimant's medical impairments, age, education, past work experience and RFC. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(g); see also Wright v. Sullivan, 900 F.2d 675, 679 (3d Cir. 1990) (stating that the Commissioner may satisfy his step five burden by identifying at least one occupation in the national economy which the claimant can perform).

An ALJ may rely on a vocational expert's testimony in response to a hypothetical question as substantial evidence at step five "if the question accurately portrays the claimant's individual physical and mental impairments." Burns, 312 F.3d at 123 (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). Case law directs the ALJ to use "great specificity" when incorporating a claimant's "mental or physical limitations into a hypothetical." Ramirez v. Barnhart, 372 F.3d 546, 554-55 (3d Cir. 2004) (concluding the ALJ's hypothetical did not "adequately capture and recite all of [the claimant's] mental impairments and the limitations caused by those impairments") (quoting Burns, 312 F.3d at 122).

The ALJ may only rely on a vocational expert's response to a hypothetical that omits limitations "reasonably discounted by the ALJ[.]" Covone v. Commissioner Social Sec., 142 Fed. App'x 585, 587 (3d Cir. 2005). "[T]he ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" Rutherford, 399 F.3d at 555 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1992)). The expert's

response to a hypothetical question that omits medically undisputed evidence of specific impairments may not be considered substantial evidence. Burns, 312 F.3d at 123.

The Third Circuit has held that an ALJ's use of the factor "simple repetitive one, two-step tasks" in a hypothetical may not to be "sufficiently descriptive to encompass" the "borderline aspects of [a claimant's] intellectual function or . . . other deficiencies." Burns, 312 F.3d at 123. In Burns, the claimant was assessed with deficiencies "in the areas of reliability, common sense, ability to function independently, and judgment or [the claimant's] flightiness, disassociation, oppositional tendencies, and difficulties in comprehension." Burns, 312 F.3d at 123. The Third Circuit remanded the case for consideration of the claimant's limitations because the ALJ's hypothetical reference to "simple repetitive one, two-step tasks" did not account for these credibly-established limitations. Id. at 123-24.

In Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), the Third Circuit affirmed its ruling in Burns, holding that a hypothetical question limiting the claimant to "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal phone calls" ran afoul of the requirement articulated in SSR 96-8p of a "'more detailed assessment' of a claimant's mental limitations at step five." Id. at 554-55. The Third Circuit concluded that the ALJ's hypothetical did not "adequately capture and recite all of [the claimant's] mental impairments," failing to "take into account the ALJ's own observation . . . that [the claimant] often suffered from deficiencies in concentration, persistence, and pace." Id. at 554. The Third Circuit determined that the limitation to simple tasks was most significant in its failure to account for the claimant's "deficiencies in pace" and that each of the jobs named by the vocational expert required the claimant to "maintain a certain degree of pace[.]" Id.

After the vocational expert classified Covington's past work in this case, the ALJ posed to him a hypothetical question addressing whether a person in Covington's position would "be able to do unskilled work[,]" given the nonextertional limitations defined in the Clinical Psychological Disability Evaluation report issued by Dr. Wagner. R. 46. The question was brief, as follows:

> ALJ: [I]f I just used Dr. Wagner's assessment, which is [exhibit] 5F, where he said she's marked in detailed, understanding and, I guess, implementing detailed instructions. But everything else was moderate if I'm reading it correctly.
>
> VE: Yeah, that's how I read it, Your Honor.
>
> ALJ: Would she be able to do unskilled work[?]

R. 46. To that question the vocational expert simply answered "yes." Id. The ALJ then asked the vocational expert whether the limitations described by Dr. Kron, whose report ALJ ultimately rejected as not credible, would permit work. R. 47. The expert replied, "absolutely not," due to the extreme nature of limitations identified by Dr. Kron. R. 47.

At this point, the ALJ turned questioning over to Covington's counsel, who asked the vocational expert whether Covington's learning disorder would have impaired Covington's performance of past work. R. 48. The vocational expert answered that, based on Dr. Wieliczko's assessment, Covington's "reading ability would have impacted her ability to work in the [DMV,] absolutely." Id. Counsel then inquired whether Covington's anxiety, as she described it herself, would "prevent her from doing almost any job." R. 49. The vocational expert answered "yes," particularly Covington's need to go to a bathroom and assume the fetal position. R. 49. Covington's counsel did not ask if Covington's learning disorder would limit

her ability to perform other work. The ALJ did not mention Covington's learning disorder at any point during questioning of the vocational expert.

The ALJ's decision summed up the testimony of the vocational expert, as follows, stating that the she had

> "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity (utilizing the limitations set forth by the consultative examiner). The vocational expert testified that given all of these factors, [Covington] would be able to perform <u>the full range of unskilled work</u>."
>
> Pursuant to SSR 00-04p, the vocational expert's testimony is consistent with the information contained in the [DOT.]"

R. 19 (emphasis added).

In posing the hypothetical in this case, the ALJ simply incorporated by reference the limitations identified in Dr. Wagner's report, mentioning without details the claimant's marked limitations in the ability to understand, remember, and carry out detailed instructions. R. 46; 222. The ALJ also made passing reference to Dr. Wagner's findings of moderate limitations in "everything else," but did not elaborate. More importantly, while Dr. Wagner's report discussed Covington's anxiety and depression, the report itself only mentioned Covington's learning disorder in passing and made no diagnosis regarding her intellectual functioning. R. 217-18. The ALJ's hypothetical does not reference any of the other medical records.

The record supports a finding that Covington has a credibly-established learning disorder that the ALJ omitted from the hypothetical. R. 16. Covington's testimony and her statements to several evaluators indicate that she has long experienced problems with intellectual functioning, having been placed in special education classes from third grade forward. R. 36, 208-09, 211. Dr. Wieliczko's January 17, 2006 psychological evaluation assessed Covington as having an I.Q.

-18-

of 71[1] and determined her reading and spelling abilities to be at a third grade level.  R. 210-11.

Dr. Chiampi's report acknowledged Covington's special education placement, R. 226, and

identified her as having "borderline intellectual functioning," R. 232, which Dr. Chiampi

identified as a "medically determinable impairment," although not one severe enough to satisfy

the diagnostic criteria to meet Listing 12.05C.  R. 232.  The ALJ herself found at step two that

Covington's learning disorder was "severe," relying on the Dr. Wieliczko's evaluation.  R. 15.

The Commissioner argues that both the ALJ's RFC assessment and the hypothetical

question properly "incorporated the assessed marked limitations with respect to detailed

instructions" by limiting Plaintiff to "simple, routine, unskilled work" and that the vocational

expert "generously accounted for Plaintiff's alleged difficulties by limiting her to unskilled

work[.]"  Id. at 13, 15.  Given the credibly-established evidence of Covington's learning disorder,

this Court concludes that reference to "simple, routine, unskilled work" did not sufficiently

account for Covington's intellectual impairments.  See Burns, 312 F.3d at 123; Ramirez, 372

F.3d at 554-55

The Commissioner contends, as well, that the ALJ appropriately found Covington's

allegations regarding her learning disability to be not fully credible and, therefore, was not

required to include associated limitations in the hypothetical.  Id. at 14-15.  The Commissioner

claims that, as was stated in the ALJ's opinion, "the vocational expert testified that claimant

---

[1] The Third Circuit provides a claimant with the "benefit of the doubt" as to I.Q. by using the
lowest of three scores on the WAIS-R series of tests.  See Burns, 312 F.3d at 124 (citing 20
C.F.R. § Pt. 404, Subpt. P, App. I, § 12.00(D)).  Covington's lowest score on her WAIS-R was 71
for her verbal I.Q. and, thus, her I.Q. is 71 for the purpose of her Social Security application.  R.
210.

would not have been able to sustain any of her past relevant work if her reading and I.Q. scores were really as low as indicated on the test results."  R. 18 (emphasis added); Def.'s Br. at 15.

The ALJ and the Commissioner have mischaracterized the expert's testimony.  In fact, the expert stated that if the WRAT-III testing and reading level assessment by DVRS was correct, Covington's "reading ability would have impacted her ability to work in the Department of Motor Vehicles . . . ."  R. 48.  Opining that Covington's reading ability "would have impacted" her work does not equate with a finding that Covington's reading ability would have prohibited her from "sustain[ing] any of her past relevant work."  R. 18 (emphasis added); Def.'s Br. at 15. Further, Covington's own testimony is consistent with the vocational expert's testimony.  As As the ALJ acknowledged in her opinion, R. 17-18, Covington testified at the hearing that she was hampered in her ability to do her job because of her learning and panic disorders and that her co-worker attempted to cover for her.  R. 29.  Finally, Covington indicated that she was slated to be fired when she resigned from her position.  Id. at 24-25.  The vocational expert's testimony does not provide a basis with which to discredit Covington's testimony or the medical evidence regarding her learning disorder or to discount Covington's learning disorder at step five.

The Commissioner also argues that the ALJ's credibility finding is supported by a suggestion by the Dr. Wieliczko that Plaintiff is capable of performing work that does not emphasize reading and spelling skills.  Def.'s Br. at 14-15 (citing R. 18).  The report states that "[g]iven [the claimant's] academic achievement level deficits and her anxiety related to this issue it is suggested that she not pursue work which would emphasize reading and spelling skills."  R. at 212.  Dr. Chiampi similarly found that Covington's "cognitive impairment," might require her to seek "more appropriate work."  R. 215.  The fact that neither evaluator declared Covington

incapable of performing any work does not permit the ALJ to discount Covington's credibly-established impairments in assessing her limitations at step five.

Finally, in arguing that Covington did not meet Listing 12.05C, the Commissioner points to Covington's achievement of a high school diploma, at age 26, as well as the her attendance at two semesters of college.  Def.'s Br. at 10 (citing R. 214).  The Social Security Administration has recognized "even someone with formal schooling may be deemed illiterate" and that a claimant's achieved "numerical grade level" does not necessarily correspond to "actual educational abilities."  Diehl v. Barnhart, 357 F. Supp. 2d 804, 823 (E.D. Pa. 2005) (Robreno, J.) (citing Frontanez-Rubiani v. Barnhardt, No. Civ.A.03-1514, 2004 WL 2399821, at *5 (E.D. Pa. Sept. 30, 2004); 20 C.F.R. § 416.964(b)).  In fact, Judge Larimer concluded in Gross v. McMahon, 473 F. Supp. 2d 384, 389 (W.D.N.Y. 2007), that "a third-grade reading level is so low that it calls into question whether plaintiff is functionally illiterate, particularly in light of plaintiff's other testimony that he had been placed in special education classes."  Campbell v. Astrue, 713 F. Supp. 2d 129, 135 (N.D.N.Y. 2010) (Mordue, J.) (citing Gross, 473 F. Supp. 2d at 389) (Larimer, J.); see also Diehl, 357 F. Supp. 2d at 823 (noting that "a handful of courts have held that remand on the issue of literacy is appropriate where a claimant tests below a third grade level so that additional evidence can be gathered").

In an evaluation credited by the ALJ, Dr. Wieliczko assessed Covington to read and spell at a third grade level.  R. 16.  The ALJ poseed a hypothetical question to the vocational expert that assumed a claimant with Covington's education level; yet, the ALJ made no effort to incorporate Dr. Wieliczko's assessment or Covington's placement in special education.  As discussed below, the Court need not reach the issue of the ALJ's analysis regarding Listing

12.05C. However, the Court wishes to note that the level of schooling achieved by Covington is not determinative of the severity of her impairment, nor should it serve as a basis to discount Covington's learning disorder at step five.

If a credibly-established limitation is omitted from the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. Burns, 312 F.3d at 122-124. The ALJ herself found Covington's learning disability to constitute a severe impairment and, yet, declined to elaborate on this finding in posing the hypothetical to the vocational expert. This Court finds this to have been in error.

## 2. The ALJ's hypothetical did not properly account for stress-related limitations.

Covington argues, as well, that the ALJ did not engage in a searching enough evaluation of Covington's individualized stress level and the impact it would have on her ability to perform "even low stress jobs," pursuant SSR 85-15. Id. at 12-14.

SSR 85-15 requires the Commissioner to "conduct a particularized assessment of an individual's ability in evaluating claims of stress and mental illness." Corona v. Barnhart, 431 F. Supp. 2d 506, 515 (E.D. Pa. 2006) (Brody, J.) (quoting Walls v. Barnhart, No. 485641, 2002 WL 485641, at *19 (E.D. Pa. Mar. 28, 2002) (Yohn, J.)). SSR 85-15 states, in relevant part,

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. For example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's

work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR-85-15.

Judge Brody held, in Corona, that the Commissioner was not "substantially justified" in defending an ALJ's opinion, based on a failure to comply with SSR 85-15, and granted attorneys' fees to the claimant, pursuant to the Equal Access to Justice Act. Corona, 431 F. Supp. 2d at 516-17. In that case, the ALJ found the plaintiff suffered from severe depression, as well as "mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration." Id. at 516. The ALJ posed a hypothetical to the vocational expert which assumed an individual who could "understand, remember, and follow simple instructions," have only "occasional changes in the work place," and have only "occasional conversations and interpersonal interactions with employees. Id. at 515. Judge Brody determined that question to be insufficient under SSR 85-15 for a failure to "address with specificity all of the mental impairments she found credible in her decision, and . . . conduct a particularized inquiry of how those impairments would limit Plaintiff's ability to perform alternative work[.]" Id. 516.

Covington was diagnosed with anxiety and panic disorder by two DVRS doctors and two consultative examiners, none of whom the ALJ chose to discredit. In fact, the ALJ specifically credited Dr. Wagner's diagnosis and determined the medical evidence to show that Covington's work stress contributed to her hospitalization and "intensive outpatient treatment." R. 17-18. Yet, the hypothetical posed the vocational expert contained no specificity regarding stress, anxiety, or panic attacks. At most, the ALJ made an offhand reference to the vocational expert

regarding Covington's moderate limitations in "everything else," but failed to note that both Dr. Wagner and Dr. Chiampi found Covington to be moderately limited in every area of social functioning, including the ability to "interact appropriately" with the public, supervisors, and co-workers; "respond appropriately to work pressures in the usual work setting;" and "respond appropriately to changes in a routine work setting." R. 222. Dr. Chiampi additionally found Covington to be moderately limited in the "ability to travel in unfamiliar places or use public transportation," a finding that appears nowhere in the ALJ's decision and was not addressed with the vocational expert. R. 225. Finally, while the ALJ discredited Covington's testimony as to the degree of her symptoms, the ALJ fully credited the testimony of Covington's husband, who testified to the incapacitating nature of Covington's panic attacks in the face of every day challenges, even outside the workplace. R. 40-42. At no point did the ALJ question the vocational expert regarding the impact Covington's panic attacks would have on her ability to perform other work.[1] This Court finds that the ALJ was obligated to address these credibly-established limitations in the step five analysis.

The Commissioner contends that the ALJ addressed the stress caused by Covington's learning disability by limiting her to "simple, unskilled work." Def.'s Br. at 17. That argument fails in the face of the Third Circuit's decisions in Burns and Ramirez, as well as the mandate of SSR 85-15 to engage in a "particularized assessment" of how Covington's mental limitations would affect her ability to perform other work. The hypothetical questions found to be deficient by the Third Circuit in Burns, 312 F.3d at 123, and Ramirez, 372 F.3d at 554-55, and by Judge Brody in Corona, 431 F. Supp. 2d 516-17, contained more detail that the skeletal question posed

_____

[1] As stated above, in response to questions from Covington's counsel, the vocational expert testified that Covington's panic disorder would affect her ability to perform other work. R. 49.

by the ALJ in this case.  Because the vocational expert's answer did not reflect all of Covington's credibly-established impairments, this Court finds that the hypothetical question posed by the ALJ was deficient, and the vocational expert's answer cannot be considered substantial evidence. The Court finds the matter should be remanded to the ALJ to properly include this information in the step five analysis.

        **3.**      **The ALJ erred in failing to inquire of the vocational expert about specific jobs available in the national economy.**

Covington asserts that the ALJ erred by failing to require the vocational expert to identify specific jobs that exist in substantial numbers in the national economy.  Pl.'s Br. at 12. Covington avers that the assessments by Drs. Chiampi and Wagner suggest that she is limited to jobs requiring only Level 1 reasoning.  Id. at 9.  Since the vocational expert did not identify which jobs would be available to someone in Covington's position and many unskilled jobs require reasoning levels greater than Level 1, Covington contends a inconsistency exists between the testimony of the vocational expert and the DOT.  Id. at 12.

To improve the "efficiency and uniformity" of this analysis, the Secretary promulgated Medical Vocational Guidelines, known as the "Grids," which address step five through use of a matrix.  Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).  "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform."  Id.  The Third Circuit has held "the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the

conclusion)." Id. at 261. In other words, the Commissioner may meet his burden at step five by relying on the appropriate rule, but only when providing notice to the claimant.

The Third Circuit has also held that "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." In Allen, 417 F.3d at 407(citing Poulos v. Commissioner of Social Security, 474 F.3d 88, 94 (3d Cir. 2007)). In Allen, the ALJ "specifically referred" to SSR 85-1, which "address[ed] the precise issue" presented in that case, but failed to connect the claimant's limitations to any aspect of the Ruling. Id. at 403-04; see also Meyler v. Commissioner of Social Sec., 238 Fed. App'x 884, 890 (3d Cir. 2007) (remanding for further explanation because the ALJ did not explain why, under the Rulings cited, the claimant's "nonexertional impairments did not prevent her from meeting the mental demands of unskilled work").

The Commissioner argues that the ALJ found Plaintiff not to be disabled "under the framework" of Rule 204.00 because her reference to "SSRs 83-12, 83-14, and 85-15 explained that Plaintiff's non-extertional functional limitations would not significantly erode the occupational base." Def.'s Br. at 20 (citing R. 18). The Commissioner explains that "both section 201.00 in Appendix 2 and SSR 85-15 state that a limitation to simple tasks does not represent more than a minimal erosion of the occupational base of unskilled work at any exertional level" and argues that these rules provide a basis for determining that Covington could perform unskilled work at any exertional level. Id. (citing SSR 85-15; 20 C.F.R. part 404, subpt. P, app. 2, 1§ 201.00(4)(I)).

The "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d

Cir. 2001) (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)).  The ALJ cited SSRs 83-12, 83-14, and 85-15 only for boiler-plate language stating that section 204.00 of the Grids provides a "framework for decisionmaking" if a claimant has solely nonexertional limitations.  R. 19.  Rather than providing notice to Covington that she was relying on rulemaking at step five, the ALJ called a vocational expert.  Her decision explicitly declared that she relied on testimony from the vocational expert "[t]o determine the extent to which [Plaintiff's] limitations erode the occupational base of unskilled work at all exertional levels."  R. 19 (emphasis added).  The ALJ went on to state that "based on the testimony of the vocational expert," she concluded Plaintiff to be "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 19 (emphasis added).  The Commissioner cannot now argue that the ALJ could have relied on rulemaking at step five when she clearly did not.

The Commissioner contends the ALJ was not required to inquire of the expert about specific jobs available to an individual with Covington's limitations, given that "there were more than 2,500 separate administratively-noticed sedentary, light, and medium occupations that the [vocational expert] could have identified[,]" under these rules.  Def.'s Br. at 21.   Yet, the vocational expert did not take administrative notice of jobs available to Covington, nor did the ALJ ask the vocational expert to provide examples of specific jobs.  Further, while the ALJ's opinion states that the vocational expert testified that an individual in Covington's position "would be able to perform the full range of unskilled work[,]" neither the ALJ's question nor the vocational expert's answer specified as to the individual's capacity to perform "the full range."  R. 46.   Having neither included specific details as to Covington's credibly-established limitations nor questioned the vocational expert as to the specific jobs available to Covington, the

ALJ's conclusion at step five that jobs exist in the national economy in substantial numbers is not supported by substantial evidence.

Given the ALJ's reliance on the vocational expert testimony, she was required, pursuant to SSR 00-4p, to identify, and obtain a reasonable explanation for, any conflict between occupational evidence provided by a vocational expert and information contained in the DOT and to explain in her decision how any such conflict was resolved. See Burns, 312 F.3d at 127. While the Third Circuit does not mandate reversal each time an ALJ fails discover and explain a conflict," Diehl, 357 F. Supp. 2d at 823, reversal is warranted a vocational expert's testimony is inconsistent with the DOT, and where the ALJ's determination is not otherwise supported by substantial evidence in the record, reversal is warranted. See Rutherford, 399 F.3d at 557 (citing Boone v. Barnhart, 353 F.3d 203, 206 (3d Cir. 2004). The ALJ has provided this Court no basis to determine whether or not the vocational expert's testimony was consistent with the DOT. As this Court is remanding this case based on the Commissioner's failure to meet his burden at step five, the Court counsels the ALJ to inquire of the vocational expert about specific jobs available in the national economy and to determine whether the resulting testimony is consistent with the DOT.

## B.    Other Objections

Covington contends that the ALJ committed a reversible error in failing to obtain medical expert testimony regarding "whether the combination of [Covington's] impaired cognitive functioning, major depressive disorder, panic disorder, and learning disability meets or equals Listing 12.05C." Pl.'s Br. at 15. Covington argues the Program Operation Manual System ("POMS") guidelines, POMS No. DI 24515.056(D)(1)(c), dictates that her I.Q. of 71, "in the

presence of other physical or mental disorders that impose additional and significant work-related limitation of function, may support an equivalence determination." Pl.'s Br. at 15.

"The ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled." Schwartz v. Halter, 134 F. Supp. 2d 640, 659 (E.D. Pa. 2001) (Van Antwerpen, J.) (citing 20 C.F.R. §§ 404.1527(e), 416.926(d), 416.927(e); SSR 96-6p, 1996 WL 374180). Findings that a claimant meets or equals a listed impairment at step three results in a finding of per se disability; thus, listings are to be "strictly construed against claimants." Lee v. Astrue, No. 06-5167, 2007 WL 1101281, at *4 (E.D. Pa. 2007) (Katz, J.) (citing Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990)).

Certain courts in this district have held that an ALJ should obtain an updated medical opinion "where the administrative record is inconclusive as to whether a claimant's impairments are equivalent" to a listing. Diehl, 357 F. Supp. 2d at 815; see also Lee, 2007 WL 1101281, at *4 (holding a medical opinion necessary "[w]here the record as it exists at the time of the administrative hearing fairly raises the question of whether a claimant's impairment is equivalent to a listing") (citing Maniaci v. Apfel, 27 F. Supp. 2d 554, 557 (E.D. Pa.1998)); Hoff v. Astrue, No. 08-cv-00218, 2009 WL 229764 (E.D. Pa. 2009) (Baylson, J.) (awarding benefits on other grounds but noting that "conflicting medical evidence should have been analyzed by the ALJ and suggests that a medical expert should have testified").

Without application of POMS No. DI 24515.056(D)(1)(c), Covington's I.Q. of 71 would place her out of the range required to meet Listing 12.05C and obviate any need for a medical expert. However, the POMS guideline on Listing 12.05(c) provides "slightly higher I.Q.'s" between 70 and 75 "may support an equivalence determination" where a claimant can satisfy the

capsule definition and establish "other physical or mental disorders that impose additional and significant work-related limitation of function." Crane v. Astrue, 369 Fed. App'x 915, 921 (10th Cir. 2010) (citing POMS No. DI 24515.056(D)(1)(c), available at http://policy.ssa.gov/poms.nsf/lnx/0424515056).

Although without the "force of law," Edelman v. Commissioner of Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981)), the Third Circuit has determined POMS guidelines "nevertheless warrant respect." Artz, 330 F.3d at 176 n.2. No court in this circuit has, yet, considered the effect of the POMS guideline on the evaluation of Listing 12.05C. But see Shontos v. Barnhart, 328 F.3d 418, 427 (8th 2003) (faulting ALJ for disregarding the mandate in Berger v. Apfel, 200 F.3d 1157, 1161 (8th Cir. 2000), to consider POMS No. DI 24515.056(D)(1)(c)); Didway v. Astrue, 303 Fed. App'x 553, 554 (9th Cir. 2008) (noting ALJ's failure to provide a "detailed analysis" under the POMS guideline). As Covington's objection here is not dispositive, this Court declines to rule on the issue of whether the ALJ should have considered the applicability of the POMS guideline to her analysis of Listing 12.05C. The ALJ may, of course, desire to give this objection consideration on remand.

## V.    **Conclusion**

For the reasons detailed above, Covington's request for review will be **granted**. The ALJ's decision is vacated and the matter will be remanded for further proceedings. An appropriate order will follow.

An appropriate order follows.

O:\CIVIL 09-10\10-2245 Covington v. Astrue\Covington v. Astrue, 10-2245 SS Appeal Memo.wpd