**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                                  |   |              |
|----------------------------------|---|--------------|
| SOPHIA LOREN SIMPSON,            | : |              |
|     Plaintiff, | : | CIVIL ACTION |
|                                  | : |              |
|    v.             | : |              |
| MICHAEL J. ASTRUE,              | : |              |
| Commissioner of Social Security, | : |              |
|     Defendant. | : | No. 10-2874  |

_____

## MEMORANDUM RE: SOCIAL SECURITY APPEAL

**Baylson, J.**                                                          **May 17, 2011**

Plaintiff, Sophia Loren Simpson, seeks judicial review of the decision by the

Commissioner of the Social Security Administration (the "Commissioner") denying her

application for Social Security Disability Insurance Benefits ("SSDI") Title XVI of the Social

Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c) (2000).  Jurisdiction is established under §

1383(c)(3), which incorporates § 405(g) of the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  After

careful and independent consideration of the matter, and for the following reasons, the Court will

affirm the decision of the Administrative Law Judge ("ALJ") and deny Simpson's request for

benefits or a new hearing.

### I.    Background and Procedural History

Simpson applied for social security and disability benefits on August 18, 2006.  (R. 21.)

She was born on January 31, 1966, and was 37 years old on January 1, 2004, the onset date of her

alleged impairment, defining her as a "younger individual" pursuant to 20 C.F.R. §404.1563.  (R.

34.)  Simpson alleges disability due to depression, obesity, diabetes mellitus, seizure disorder, deep vein thrombosis, pulmonary embolism, and left knee disorder.  (R. 23).

Simpson has completed high school and is able to communicate in the English language.  (Id.)  She currently resides with her niece, age 38 years, who works full-time during the day.  (R. 40.)  Simpson's prior work experience was as a Nurse Assistant (DOT 355.674-014), which is classified as a semi-skilled, medium occupation performed at the heavy level of exertion.  (R. 34.)  Because Simpson's physical and mental impairments limit her ability to meet this occupation's strength and reasoning requirements, the ALJ found that Simpson is unable to return to her past relevant work.  (Id.)

### A.    Medical Evidence of Simpson's Mental Impairments

On March 1, 2007, Simpson underwent a psychological evaluation by Lori Hart, Ph.D, at Heart-to-Heart Counseling.  (R. 357.)  The findings of the report indicate that Simpson claims to suffer from symptoms associated with depression, which began when she "lost her job, financial resources, insurance and an apartment in 2005."  (R. 358.)  During the course of the evaluation, Simpson stated "I just shut down, I am crying all the time, I stay in my room and I eat. I gained 45 pounds in the past two years. I feel no reason to get out of bed. I'm up all night and sleep all day.  I don't be bothered with nobody.  I feel like it's never gonna change."  (Id.)  Additionally, Simpson stated that she was seeing a therapist, Sarah Kruger, at the Warren E. Smith Center and was prescribed Prozac, which she was not compliant with taking.  (Id.)  Dr. Hart diagnosed Simpson with Major Depressive Disorder, but observed that "Ms. Simpson is likely to be able to understand simple or detailed job instructions" and "interact appropriately with coworkers as well as the public."  (R. 359.)

On April 3, 2007, Paul A. Perch, Ed.D, completed a Psychiatric Review Technique ("PRT") Report based on Listing 12.04 (Affective Disorders).[1]  (R. 360.)  The PRT indicated that Simpson has mild limitations in the area of activities of daily living and moderate limitations in the areas of maintaining social functioning and concentration, persistence, or pace.  (R. 370.) The report indicted that Simpson has had no episodes of decompensation, nor has Simpson established other "C" criteria for Listing 12.04 (Affective Disorders).  (R. 371.)

Dr. Perch also conducted a Mental Residual Functional Capacity Assessment ("RFC"). (R. 373.)  The RFC indicated that Simpson can "understand, retain and follow simple job instructions, i.e. perform one and two step tasks."  (R. 375.)  The RFC further indicated that Simpson possesses the ability to "get along with others in the workplace without distracting them" and "can sustain an ordinary routine without special supervision." (Id.)  Finally, Dr. Perch indicated that Simpson "retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks."  (Id.)  Ultimately, the findings of the RFC indicated that

---

[1]  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Listing 12.04 defines affective disorder as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life, it generally involved either depression or elation."  Id.  To establish an impairment consistent with Listing 12.04, a claimant must satisfy the requirements of both parts "A" and "B" or part "C."  Id.  Part "A" outlines a list of symptoms associated with depressive, manic, or bipolar disorders.  Id. "B," requires a claimant to establish "(1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration."  Id.  Part "C" requires "a medically documented history of a chronic affective disorder of at least two years duration with repeated extensive episodes of decompensation or a residual disease process that had resulted in such marginal adjustments that any slight change in demands would result in further decompensation or a history of more than one year's inability to function outside a highly supportive living arrangement."  Boniella v. Comm'r of Soc. Sec., No. 07-5237, 2009 WL 2612354, at * 4 (W.D. Pa. 2009) (Mitchell, Magistrate J.).

Simpson is able to "meet the basic mental demands of competitive work on a sustained basis despite the limitations from her impairment." (Id.) Dr. Perch further found that Simpson's own statements during the course of the evaluation were only "partially credible." (R. 275.)

## B. Social Security Hearing

The Social Security Administration denied Covington's application on April 4, 2007, and Covington timely filed a request for a hearing by an ALJ. (R. 21.) Following the hearing, the ALJ denied Simpson's claim in a written decision of May 30, 2008, holding that Simpson is not disabled under the Act. (R.11-25.) At steps one and two, the ALJ found that Simpson had not engaged in substantial gainful activity since her onset date and that she had the following severe impairments: depression, deep venous thrombosis and pulmonary embolism, and left knee disorder.[2] R. 23.

At step three, the ALJ found that "[a]lthough the claimant's depression may meet some of the criteria of part 'A' of Listing 12.04 (Affective Disorders), neither the functional limitations required by part 'B' of the listings, nor the criteria required by part 'C' of the listings are met." (R. 25.) In reaching this conclusion, the ALJ credited the psychiatric assessment completed by Dr. Perch as "generally supported by and consistent with the objective medical evidence." (R. 25.) However, the ALJ found the assessment to show Simpson's mental impairment not to be as severe as Simpson claimed and found, in contrast to Dr. Perch's assessment, that Simpson's social functioning limitations were "mild," not "moderate."[3] (R. 15.)

---

[2] The ALJ made extensive findings as the Simpson's physical impairments, which are not relevant to the issue on appeal.

[3] In contrast, the ALJ found Simpson's physical impairments more limiting than was assessed by the relevant consultative examiner. (R. 27.)

At step four, the ALJ found Simpson to have the residual functional capacity to perform a restricted range of sedentary work.  Id.  In addition to certain physical restrictions, the ALJ found Simpson's "mental residual functional capacity [to be] such that she is limited to simple routine tasks secondary to a moderate (limited, but still able to function satisfactorily) limitation in concentration, persistence, and pace."  R. 31.

At step five, ALJ posed a hypothetical to the VE asking him to identify "some" sedentary, unskilled occupations that a hypothetical individual could perform who had Simpson's physical limitations and who was additionally "limited to performing just simple, routine tasks, secondary to a moderate, which is defined as limited but still able to function satisfactorily.  The moderate limitation is in concentration, persistence and pace."  (R. 59.)  The VE stated as follows.

> Yes, Your Honor.  Telephone information clerk, industry designation is financial institutions, code 237.367-046.  The [Specific Vocational Preparation or] SVP is 2, unskilled.  Physical demand is sedentary.  Approximately 1,500 jobs in the Philadelphia region, 1,400,000 nationally.
>
> Charge account clerk, industry designation is clerical, code 205.367-014.  The SVP is 2, unskilled.  Physical demand is sedentary.  Approximately 2,000 jobs in the Philadelphia region, 2,400,000 nationally.

R. 60.  The ALJ responded by asking, "Would there be others?"  Id.  The VE answered, "Yes, Your Honor."  Id.  Simpson's counsel asked no questions of the VE.  R. 60.

The ALJ found the VE's testimony to be consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 35.  Relying on the testimony of the VE, the ALJ determined that, "considering [Simpson's] age, education, work experience, and residual functional capacity, [Simpson] has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 35.

The ALJ concluded that Simpson "has not been under a disability within the meaning of the Social Security Act since August 18, 2006, the date the application was filed." (R. 21.) Simpson timely requested, but was denied, review by the Appeals Council, making the ALJ's decision final on April 16, 2010.   On October 28, 2010, Simpson filed this action requesting review of the denial by the ALJ of Simpson's disability benefits.

## II.   Parties' Contentions

### A.   Simpson's Objections

Simpson filed a motion asking that the Court to grant summary judgment in her favor or, alternatively, to find that the Commissioner applied the incorrect legal standard and remand the case to the Commissioner for further decision.  (Pl.'s Br. at 3.)  Simpson contends that, because of discrepancies between the testimony of the VE and the DOT, the VE's testimony cannot serve as substantial evidence to support the ALJ's finding that jobs Simpson can perform exist in substantial numbers in the economy.  (Id. at 3.)  Simpson argues further that, because of this contradiction the VE's testimony does not constitute substantial evidence and the Commissioner's finding is unsupported and must be rejected.  (Id. at 9.)

### B.   The Commissioner's Response

The Commissioner argues that there is substantial evidence to support the testimony of the VE and that his testimony constitutes substantial evidence in favor of the ALJ's finding. (Def.'s Br. at 3.)

The Commissioner argues that the jobs identified by the VE "were only representative examples, as the [VE] stated that he could also identify additional jobs that could be performed with the residual functional capacity set forth by the ALJ." (Id.)  Additionally, the Commissioner

argues that Simpson's argument that jobs with a reasoning level of 3 require abilities beyond those possessed by an individual limited to simple, routine tasks is without merit.  (Id. at 6.) Thus, the Commissioner contends that Simpson's application for SSDI benefits was properly denied by the ALJ.

## III.   Legal Standards

### A.   Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.

### B.   Standard of Review

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.  However the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  Id.  Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'"  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)

(quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). This Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C.    Disability Claims Analysis

To be defined as disabled under the Social Security Act, a claimant "must demonstrate some 'medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period.' " Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422 427 (3d Cir. 1999); see also 42 U.S.C. § 423(d)(1). The Act requires claimants to establish that their "physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Id. (citing Plummer, 186 F.3d at 427-28 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner has promulgated a five-step sequential evaluation for determining whether a claimant is eligible for benefits, set forth in 20 C.F.R. § 404.1520. First, the Commissioner must consider a claimant's current work activity and deny the claim if a claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b), 416.920(b). Second, the Commissioner must determine whether the impairment or combination of impairments suffered by a claimant are severe. 20 C.F.R. § 404.1520(c), 416.920(c). If a claimant fails to show either that the impairments are "severe" or do not meet the duration

requirement in 20 C.F.R. § 404.1509, the Commissioner must deny the claim. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Three, the Commissioner must evaluate whether a claimant's impairment(s) meets or equals the severity of one of the impairments in the Listing of Impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d), 416.920(d). If so, a claimant is eligible for disability benefits. Id.

Fourth, if the Commissioner does not approve the claim under step three, the Commissioner must consider whether a claimant retains the residual functional capacity ("RFC") to meet the physical or mental demands of past relevant work. 20 C.F.R. § 404.1520(e)-(f), 416.920(e)-(f). A claimant must show an inability to resume past relevant work. Burnett, 220 F.3d at 118. Finally, if a claimant meets this burden, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Burnett, 220 F.3d at 118, 20 C.F.R. § 404.1520(e)-(f), 416.920(e)-(f). In this final step, the Commissioner must approve the claim unless the Commissioner can show that other jobs "exist in significant numbers in the national economy which the claimant can perform," consistent with the claimant's impairments, age, education, past work experience, and RFC. Burnett, 220 F.3d at 118-19, 20 C.F.R. § 404.1520(f), 416.920(f).

**IV.      Discussion**

Pursuant to 20 C.F.R. § 404.1566(d) and 416.966(d), the Administration may take administrative notice at step five of "reliable job information" found in the DOT. The regulations provide, as well, for the use of vocational experts and specialists to provide occupational evidence. 20 C.F.R. § 404.1566(e); 416.966(e). The Administration issued SSR

00-4p to provide guidance to resolve conflicts between these two sources of information.  SSR

00-4p, at *1.   The Administration recognized that a "VE . . . may be able to provide more

specific information about jobs or occupations than the DOT."  Id. at 3.  Nonetheless, "[w]hen

there is an apparent unresolved conflict between VE or VS evidence and the DOT, the

adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS

evidence to support a determination or decision about whether the claimant is disabled."  Id. at 2.

The Third Circuit has interpreted SSR 00-4p to require that the ALJ question the VE on the

record about the existence of any conflict, "elicit a reasonable explanation" where such a conflict

appears, and explain in the decision "how the conflict was resolved."  Burns v. Barnhart, 312

F.3d 113, 127 (3d Cir. 2002).

        The Third Circuit has held that a failure to follow SSR 00-4p may result in a case being

remanded by the district court, Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005).

However, the Third Circuit has "refused to mandate reversal where an ALJ has failed to 'discover

and explain a conflict.'"  Diehl v. Barnhart, 357 F. Supp. 2d 804 (E.D. Pa. 2005) (finding inquiry

into a possible conflict unnecessary in light of both detailed questioning of the VE by ALJ and

attorney and the VE's expressed knowledge of DOT).  Even recognized inconsistencies "need not

be fatal if substantial evidence exists in other portions of the record that can form an appropriate

basis to support the result."  Rutherford, 399 F.3d at 557 (concluding that substantial evidence

existed to support the ALJ's opinion, despite "minor inconsistencies" between the DOT and VE

testimony, where inconsistencies did not exist as to all the jobs listed and the VE specified that

the jobs named were "simply examples, rather than an exhaustive list"); see also Massachi v.

Astrue, 486 F.3d 1149, 1152 n.2 (9th Cir. 2007) ("[F]ailure to make the requisite inquiry is

harmless where there is no conflict or where the vocational expert's testimony provides sufficient support to justify any potential conflict."). Plaintiff bears the burden of showing that the error was harmful. Shinseki v. Sanders, 129 S.Ct. 1696 (2009).

In the DOT, SVP "levels refer to the actual skill level necessary to perform the listed job." McHerrin v. Astrue, No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (Slomsky, J.) (citing SSR 00-4p). The Administration has defined "unskilled work" to correspond to an SVP of 1-2. Id.

DOT reasoning levels refer to informal and formal levels of education required for satisfactory job performance. Id. A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). The DOT defines level-2 reasoning as the capacity to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations." Money v. Barnhart, 91 Fed. App'x 210, 215 (3d Cir. 2004) (citing Appendix C: General Educational Development, U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II at 1011 (4th ed. 1991) (emphasis added). A reasoning level of 3 requires a person to "'[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations.'" Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (quoting U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II at 1011 (4th ed. 1991)) (emphasis added).

There is a growing consensus within this Circuit and elsewhere that "[w]orking at

reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive." Money v. Barnhart, 91 Fed. App'x 210 (3d Cir. 2004). See e.g. Grasty v. Astrue, 661 F. Supp. 2d 515, 523-24 (E.D. Pa. 2009) (Robreno, J.) (concluding the jobs named, with reasoning levels of 2, to be "entirely appropriate," where claimant was limited to simple, repetitive tasks, but not reaching the appropriateness of level-3 jobs for claimant); Jones v. Astrue, 570 F. Supp. 2d 708, 715-16 (E.D. Pa. 2007) (Pratter, J.) (finding no "apparent inconsistency") (and cases cited), aff'd, 275 Fed. App'x 166 (3d Cir. 2008). see also Hackett, 395 F.3d at 1176 (finding "level-two reasoning appears more consistent with Plaintiff's RFC limiting her to "simple and routine work tasks"); Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal.2005) (Larson, J.) (finding no inconsistency between level 2 reasoning and claimant's RFC limiting her to "simple, repetitive mental tasks").

In contrast, some courts have found a conflict between a VE's testimony that a claimant can perform a job with a reasoning level of 3 and an RFC limiting that claimant to "simple and routine work tasks." Hackett, 395 F.3d at 1176; see also Etter v. Astrue, No. 10-582-OP, 2010 WL 4314415, at *3 (C.D. Cal. 2010) (Parada, Magistrate J.) (listing numerous district court cases within the Ninth Circuit finding a limitation to "simple, repetitive tasks" to be inconsistent with a reasoning level of 3); McHerrin, 2010 WL 3516433, at *3 (finding an unresolved conflict between a limitation to "simple, repetitive tasks" and testimony that claimant could perform her past work as a surveillance system monitor, requiring level-3 reasoning); Green v. Astrue, No. 10-468, 2010 WL 4929082, at *5 (W.D. Pa. 2010) (Ambrose, J.) (finding that "reasoning level of 3 suggests mental demands beyond simple, repetitive, routine work"); Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1303-04 (M.D. Fla. 2006) (Pizzo, Magistrate J.) (agreeing with claimant that

"reasoning level 3 exceeds her limitation to simple interactions and tasks").

Simpson contends that the VE's testimony -- that the occupations Telephone Quotation Clerk, DOT Code 237.367-046, and a Charge Account Clerk, DOT Code 205.367-014, would be available to a hypothetical claimant in Simpson's position – is contradicted by the job descriptions included in the DOT, which state that both of the jobs named require level-3 reasoning skills (on a six level scale). See Pl. Ex. A. Simpson argues that these jobs require a greater capacity for reasoning than Simpson possesses, based on the RFC assessed by the ALJ limiting her to "simple, routine tasks secondary to a moderate (limited, but still able to function satisfactorily) limitation in concentration, persistence, and pace." R. 33-34.

Without a ruling from the Third Circuit on this issue, this Court finds the decision of the Seventh Circuit in Terry v. Astrue 580 F.3d 471 (7th Cir. 2009), most applicable to these particular facts. In Terry, the Seventh Circuit, although vacating and remanding on other grounds, found no "apparent conflict" between the claimant's limitation to unskilled work involving simple instructions and testimony by the VE that the claimant could perform jobs with a reasoning level of 3. Id. at 474, 476 (remanding on other grounds). Remarking on facts very similar to those presented here, the Seventh Circuit stated that

> Tellingly, [the claimant] does not argue that she cannot perform these skills, perhaps because the record suggests she can; she finished high school, completed training to become a certified nurses's assistant, and has the cognitive capacity to follow simple instructions.
>     Moreover to the extent that there was a conflict, SSR 00-4p requires the ALJ to obtain an explanation when the conflict between the DOT and the VE's testimony is apparent. Because [the claimant] did not identify any conflict at the hearing, she would have to show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. [The claimant's] educational background and cognitive abilities appear to match the requirements of GED reasoning level three, and so any conflict is not so obvious that the ALJ should have pursued the question.

Id. (internal citations and quotation marks omitted); see also Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir.2007) (concluding that information and customer service clerk positions requiring level-3 reasoning were not incompatible with a limitation to unskilled work and failure to comply with SSR 00-4p harmless); Marshall v. Barnhart, No. 01-2211, 2002 WL 32488432, at *10 (D. Md. Sept. 27, 2010) (Day, J.) (finding that a claimant limited to simple, repetitive, one-two-three step tasks could perform job with a reasoning level of 3 where there was no evidence in the record that claimant lacked the "common sense" required to perform job).

The VE considered the information contained in the DOT, Simpson's RFC, and her testimony, as well as the factors that make up any claimant's vocational profile: including age, work experience, and educational level. See 20 C.F.R. §§ 416.963, 416.964, 416.965. Simpson completed a high school education and was trained as a nurse's assistant, performing semi-skilled work in the past which the VE determined to have the SVP of 4 and require a reasoning level of 3, based on the DOT code 355.674-014. (R. 58.) In her psychological evaluation, Dr. Hart found Simpson had the capacity to "understand simple or detailed job instructions as is reflected in her past employment history" and was "likely to be able to adjust to minor changes in work routine and cope with minor work stressors." (R. 359.) Even Dr. Perch, whose assessment the ALJ relied upon, but gave limited weight, found that Simpson "retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks." (R. 370, 373). At the hearing, Simpson testified as to no difficulties with memory, although some problems with concentration, which she attributed to her medication. R. 49. 54. As in Terry, Simpson's "educational background and cognitive abilities appear to match the requirements of GED reasoning level three." Terry, 580 F.3d at 476. While the Third Circuit has recognized the

ALJ's "affirmative duty" to inquire about conflicts, Rutherford, 399 F.3d at 557, here "any conflict [was] not so obvious that the ALJ should have pursued the question." Terry, 580 F.3d at 476. In fact, Simpson's counsel declined question the VE about any conflict with the DOT or cross-examine the VE at all. R. 60.

The sum total of Plaintiff's argument on appeal is that the "telephone clerk and charge-account clerk positions cited by the VE demand greater reasoning skills than Plaintiff possesses." Pl.'s Br. at 4. Yet, Simpson has not challenged the credibility determination of the ALJ, who gave limited weight to both Dr. Perch's assessment and Simpson's own testimony regarding Simpson's limitations. R. 25-26. Nor does Simpson points to any evidence in the record that establishes that she is unable to perform the jobs suggested by the VE in his testimony.

Further, as in Rutherford, 399 F.3d at 557, the occupations listed by the VE were simply representative examples not intended to provide an exhaustive list of work available to Simpson, given her limitations. In fact, the ALJ asked the VE to identify only "some" of the occupations that would be available to a hypothetical individual in Simpson's position and, then, confirmed that there would be other jobs available, in addition to those named. R. 60. Given that this is the sole challenge raised by Simpson to the ALJ's opinion, any perceived inconsistency between a limitation to "simple, routine tasks" and a reasoning level of 3 is "simply not egregious enough - either in number or in substance - to bring into question the ALJ's reliance on the expert testimony as a whole." Young, 2010 WL 2135627, at *7 (concluding that, since no inconsistency existed between the DOT's job descriptions and examples of jobs requiring frequent lifting, the ALJ's failure to inquire about a possible inconsistency did not require remand) (citing Rutherford, 399 F.3d at 558). As in Rutherford and Young, this Court finds that

-15-

the VE's testimony provided substantial evidence to support the ALJ's determination the Simpson was not disabled.

**V.**      **Conclusion**

For the reasons detailed above, the Court concludes that the ALJ possessed substantial evidence in support of his decision, and did not err in concluding, based on the entire record of medical evidence, that, although Simpson suffers from a severe mental impairment, she has the residual capacity to perform some jobs available in the national economy.

An appropriate Order follows.

O:\CIVIL 09-10\10-2874 Simpson v. Astrue\Simpson v. Astrue, 10-2874 SS Appeal Memorandum.wpd